IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
ASSIGNED ON BRIEFS FEBRUARY 23, 2011

STATE OF TENNESSEE, EX REL NATALIE L. DANCY v. PAUL L. KING

Direct Appeal from the Juvenile Court for Shelby County
No. V5947      Curtis S. Person, Judge

No. W2010-00934-COA-R3-JV - Filed April 5, 2011

The petitioner executed a voluntary acknowledgment of paternity shortly after the birth of
a child. Several years later, after he was ordered to pay child support, he filed a petition
seeking to rescind the voluntary acknowledgment of paternity, or alternatively seeking court-
approved DNA testing, pursuant to Tennessee Code Annotated section 24-7-113. The
juvenile court denied his petition upon finding that he failed to prove fraud in the
procurement of the voluntary acknowledgment of paternity. Finding that the evidence
preponderates against the trial court's finding concerning fraudulent procurement, we reverse
and remand for further proceedings to include parentage tests.

Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Juvenile Court Reversed
and Remanded

ALAN E. HIGHERS, P.J., W.S., delivered the opinion of the Court, in which DAVID R. FARMER,
J., and HOLLY M. KIRBY, J., joined.

Paul L. King, Memphis, Tennessee, *pro se*

Robert E. Cooper, Jr., Attorney General and Reporter, Joe Whalen, Associate Solicitor
General, Warren Jasper, Senior Counsel, Nashville, Tennessee, for the appellee, State of
Tennessee, ex rel Natalie L. Dancy

## OPINION

### I. FACTS & PROCEDURAL HISTORY

On December 31, 2008, the State of Tennessee filed a petition for child support on behalf of Natalie L. Dancy ("Mother"), alleging that Paul Lewis King ("Mr. King") had a duty to support Ms. Dancy's child ("Son"), who was born in 2003.[1] Following a hearing, a juvenile court referee issued findings and recommendations to the juvenile court. The referee found that Mr. King should pay $436 per month in child support, beginning May 1, 2009, in addition to $32,264 in retroactive child support, owed since the date of Son's birth, at the rate of $35 per month. The juvenile court judge adopted and confirmed the referee's findings as an order of the juvenile court.

Shortly thereafter, on July 14, 2009, Mr. King filed a sworn petition to disestablish paternity, requesting that the court rescind the voluntary acknowledgment of paternity ("VAP") executed by Mr. King when Son was born, or in the alternative, order court-approved DNA testing, pursuant to Tennessee Code Annotated section 24-7-113. The petition stated that Mr. King had signed the VAP because Mother told him that he was the father of Son. The petition further stated that Mother had "knowingly lied" when she made said statement, and that Mr. King subsequently discovered that Mother was having a sexual relationship with his roommate. Mr. King's petition stated that he had been denied visitation with Son. Mr. King attached to his petition a copy of an independently-obtained DNA test that was performed on or about June 16, 2009, which established a zero percent probability that Mr. King was Son's father. He requested that the court rescind the VAP and disestablish his paternity, or in the alternative, order further DNA testing. The petition stated that "[t]he requested relief will not affect the interests of the child, the state, or any Title IV-D agency, as the biological father may be ordered to pay child support."

The State filed a response, arguing that Mr. King's allegations did not rise to the level of fraud in the procurement such that he would be entitled to relief pursuant to Tennessee Code Annotated section 24-7-113. The State also filed a motion to exclude the private DNA test obtained by Mr. King.

Following a hearing on September 30, 2009, a juvenile court magistrate recommended that the State's motion to exclude the DNA test be sustained and that Mr. King's petition to disestablish paternity be denied, as he "failed to prove fraud in the procurement of the

---

[1]    According to the petition, Ms. Dancy had applied for child support enforcement assistance pursuant to Title IV-D of the Social Security Act. However, it appears that she did not appear at any of the juvenile court proceedings discussed herein.

Voluntary Acknowledgment of Paternity." The magistrate's findings were confirmed and adopted by the juvenile court judge, but apparently, Mr. King subsequently requested a rehearing before the juvenile court judge.

At the hearing before the juvenile court judge, Mr. King's attorney conceded that the private DNA test was inadmissible. Counsel for Mr. King also conceded that Mr. King filed the petition to set aside the VAP more than five years after it was signed. As such, Mr. King was required to demonstrate "fraud in the procurement of the acknowledgment by the mother of the child" in order to challenge the VAP. *See* Tenn. Code Ann. § 24-7-113(e)(2). Mr. King's counsel requested that the court order court-approved DNA testing and/or grant Mr. King "prospective relief under Rule 60."[2]

Mr. King was the only witness to testify, as Mother failed to appear at the hearing despite the issuance of a subpoena. Mr. King testified that he and Mother had dated for about two years before Son was born, and that they dated "on and off" after Son's birth. Mr. King said that he signed the VAP when Son was born with the belief that he was Son's father because Mother told him that she had not engaged in a sexual relationship with any other person and that he was the father. He testified that he stopped dating Mother when Son was two years old because he discovered that Mother was having a sexual relationship with his roommate. Mr. King testified that he had been living with his roommate for several years, and that he asked Mother how long she had been involved in the relationship, but Mother refused to talk about it. Mr. King said that he then questioned Mother about his paternity of Son, and Mother "said that I was still the father."

Nevertheless, Mr. King testified that the incident involving Mother and his roommate caused him to suspect that he was not Son's father. Mr. King testified that shortly after the incident, he came to juvenile court and asked about obtaining a DNA test, and "they told me I couldn't unless I put myself on child support." Mr. King testified that he decided not to proceed with the paternity testing after being told that a formal child support order would be required. He said, "I was doing my part, you know, I was taking care of him so I figure[d] I shouldn't have to be put on child support."

Mr. King testified that he had provided support for Son voluntarily for the first two years of his life by giving money to Mother. However, he said that Mother stopped allowing him to see Son after he discovered her relationship with his roommate. He explained that he then stopped providing financial support because Mother refused his requests to see Son and

---

[2] Rule 60.02 provides, in pertinent part, "On motion and upon such terms as are just, the court may relieve a party or the party's legal representative from a final judgment, order or proceeding for the following reasons: . . .(4) . . . it is no longer equitable that a judgment should have prospective application."

he "didn't know where she was." At the hearing, Mr. King testified that he no longer has any relationship with Son, who was nearly seven years old at the time of the hearing.

Mr. King conceded that he knew he had signed a VAP when Son was born. When asked whether he was content being named as Son's father during the years since the incident with Mother, until the State filed the petition for child support, Mr. King replied, "Not really. I didn't know what to do really."

At the conclusion of the hearing, the juvenile court judge denied Mr. King's petition to disestablish paternity and reconfirmed the findings and recommendations of the magistrate. Mr. King then filed a motion to alter or amend, or for a new trial, along with his own affidavit, in which he basically restated his testimony from the hearing. The motion was denied on March 18, 2010, and Mr. King timely filed a notice of appeal.

## II. ISSUES PRESENTED

On appeal, Mr. King argues that the trial court erred in denying his petition to rescind the VAP and/or for further DNA testing, and he contends that the court erred in failing to set aside the child support order. For the following reasons, we affirm in part and we reverse in part, and we remand for further proceedings consistent with this opinion.

## III. DISCUSSION

We begin by addressing Mr. King's contention on appeal that the juvenile court should have set aside the child support order and relieved him of all child support obligations, "past or future." Tennessee Code Annotated section 36-5-101(f)(1) provides, in relevant part:

> Any order for child support shall be a judgment entitled to be enforced as any other judgment of a court of this state, and shall be entitled to full faith and credit in this state and in any other state. *Such judgment shall not be subject to modification as to any time period or any amounts due prior to the date that an action for modification is filed and notice of the action has been mailed to the last known address of the opposing parties*.

(emphasis added). In *State ex rel. Hickman v. Dodd*, No. W2008-00534-COA-R3-CV, 2008 WL 4963508, at *1 (Tenn. Ct. App. Nov. 21, 2008), a man sought rescission of a VAP after discovering that he was not the child's biological father, and he also sought relief from both his retroactive and future child support obligations. We explained that "a trial court may not retroactively forgive a child support arrearage, but may only modify child support obligations

-4-

back to the date that a petition or motion for modification is filed and notice is provided to the non-moving party." *Id.* at \*2. In other words, we stated, the trial court lacks the authority to retroactively modify the child support order and forgive the arrearage. *Id.* Thus, we similarly conclude that Mr. King is not entitled to retroactive relief from his child support obligation and arrearage. We may only consider whether he is entitled to relief from his support obligation since the date of his petition, July 14, 2009, and going forward.[3]

Again, in the lower court, Mr. King sought to challenge the VAP pursuant to Tennessee Code Annotated section 24-7-113, and he also sought prospective relief from the child support order pursuant to Tennessee Rule of Civil Procedure 60. First, we will consider his challenge to the VAP.

Tennessee Code Annotated section 24-7-113 "establishes a simplified procedure for unmarried fathers to legally establish their paternity without the intervention of the court, by simply executing a voluntary acknowledgment of paternity." *In re C.A.F.*, 114 S.W.3d 524, 528 (Tenn. Ct. App. 2003). The mother must also sign the VAP, certifying that she is the mother and that the other signatory is the father. *Id.* A VAP establishes a "legal relationship" between the named father and the child, *In re Adoption of W.J.P.*, No. E2007-01043-COA-R3-PT, 2008 WL 246015, at \*7 (Tenn. Ct. App. Jan. 30, 2008), and it constitutes "a basis for establishing a support order without requiring any further proceedings to establish paternity." Tenn. Code Ann. § 36-5-101(a)(6).

Tennessee Code Annotated section 24-7-113 also sets out the manner in which a party must challenge a VAP, including a statute of limitations providing time limits during which a VAP can be challenged. *State ex rel. Robinson v. Glenn*, No. W2006-00557-COA-R3-JV, 2007 WL 1227377, at \*4 (Tenn. Ct. App. Apr. 26, 2007); *State ex rel. Parks v. Parks*, No. W2005-00957-COA-R3-JV, 2006 WL 2032560, at \*8 (Tenn. Ct. App. Jan. 19, 2006). Subsection (c) of the statute allows the VAP to be rescinded within sixty days of its completion under certain circumstances. Tenn. Code Ann. § 24-7-113(c). Alternatively, the VAP may be challenged within five years of its execution on the basis of "fraud, whether extrinsic or intrinsic, duress, or material mistake of fact." Tenn. Code Ann. § 24-7-113(e)(1). Mr. King concedes that his challenge to the VAP came more than five years after its execution. However, the statute further provides that a challenge to a VAP "shall not be barred by the five (5) year statute of limitations where fraud in the procurement of the acknowledgment by the mother of the child is alleged and where the requested relief will not

---

[3] We also note that Mr. King only requested prospective relief under Rule 60. "Because [he] rests his claim upon Rule 60.02(4), even if we do determine that relief should have been granted to him, he will still be bound by the [challenged order] up until the time of filing of his petition for relief[.]" *State ex rel. Taylor v. Wilson*, No. W2004-00275-COA-R3-JV, 2005 WL 517548 at \*3 (Tenn. Ct. App. Mar. 3, 2005).

affect the interests of the child, the state, or any Title IV-D agency." Tenn. Code Ann. § 24-7-113(e)(2). The burden of proof in any such proceeding is on the challenger. Tenn. Code Ann. § 24-7-113(e)(4). If, after a hearing, the court finds based upon the evidence presented that there is a "substantial likelihood" that "fraud in the procurement of the acknowledgment by the mother" existed, "then, and only then, the court shall order parentage tests," provided that it also finds that this relief "will not affect the interests of the child, the state, or any Title IV-D agency." Tenn. Code Ann. § 24-7-113(e)(2); *Granderson v. Hicks*, No. 02A01-9801-JV-00007, 1998 WL 886559, at *4 (Tenn. Ct. App. W.S. Dec. 17, 1998). Thus, according to the statute, the trial court "shall" order parentage tests when a proper showing is made. *Id.* at *4.

In the case at bar, the juvenile court judge did not explain the basis for his denial of Mr. King's petition. He simply reconfirmed the juvenile court magistrate's ruling, which had stated that Mr. King "failed to prove fraud in the procurement of the Voluntary Acknowledgment of Paternity." In order to state a claim for fraud, the following elements must be established:

(1) an intentional misrepresentation with regard to a material fact;
(2) knowledge of the representation['s] falsity – that the representation was made knowingly or without belief in its truth, or recklessly without regard to its truth or falsity;
(3) that the plaintiff reasonably relied on the misrepresentation and suffered damage; and
(4) that the misrepresentation relates to an existing or past fact, or, if the claim is based on promissory fraud, then the misrepresentation must embody a promise of future action without the present intention to carry out the promise.

*Jones v. State ex rel. Coleman*, No. W2006-00540-COA-R3-JV, 2006 WL 3613612, at *3 (Tenn. Ct. App. Dec. 12, 2006) (quotation omitted). Here, Mr. King claimed that Mother knowingly lied to him about being Son's father, and he testified that she told him that she had not engaged in sexual relations with anyone else. It is undisputed that Mr. King had no knowledge of Mother's relationship with his roommate when he executed the VAP. Mr. King testified that Mother refused to speak to him after he discovered her relationship with his roommate, and consequently, she had never actually admitted to having a relationship with his roommate prior to Son's birth. However, Mr. King testified that he now believes that they were having a relationship during that time because he was working the third shift, and his roommate "would be there when I would leave." From our review of the record, we conclude that the evidence preponderates against the juvenile court's finding concerning fraud in the procurement of the VAP. Based upon the evidence presented at the hearing, we find that there is a substantial likelihood that Mother knowingly lied to Mr. King about her

lack of sexual contact with other persons and that she was at least reckless with regard to the truth in telling Mr. King that he was Son's father. As such, Mr. King met his burden of establishing a substantial likelihood of fraud pursuant to Tennessee Code Annotated section 24-7-113(e)(2).

As previously noted, a VAP can only be challenged outside the five year statute of limitations where "the requested relief will not affect the interests of the child, the state, or any Title IV-D agency." Tenn. Code Ann. § 24-7-113(e)(2). "By including this second requirement in the statute, the legislature clearly recognized that when a voluntary acknowledgment of paternity has gone unchallenged for over five years, it may not be in the child's best interest to set aside that acknowledgment, even if the named father is not the biological father." *In re A.N.F.*, No. W2007-02122-COA-R3-PT, 2008 WL 4334712, at \*15 (Tenn. Ct. App. Sept. 24, 2008). "The interest in determining true parentage must, of course, be weighed against the need for stability for the child, particularly in situations in which the child has long believed that the party requesting the blood test was his father." *Granderson*, 1998 WL 886559, at \*3.

Here, Mr. King testified that he has no relationship with Son, as Mother had refused to allow him to see Son since the incident that occurred when Son was two years old. There was no evidence to suggest that Son has bonded with Mr. King as his father. Thus, allowing court-approved parentage tests would not cause emotional harm to Son or damage to an existing father-son relationship. Although Mr. King had been paying child support for approximately three months at the time of the hearing, and Son could lose that support if Mr. King is ultimately granted prospective relief from the child support order, the economic damage can at least be partially allayed by the $32,264 judgment for child support arrearages that Mr. King remains obligated to pay. Moreover, Son has an interest in being supported financially by his *biological* father, whomever that may be. If the VAP is not rescinded, and if Mr. King is not, in fact, the biological father, then Son's interest in receiving support from his biological father is unlikely to be realized, as neither Mother nor the State will have an incentive to pursue his biological father for support. *See White v. Armstrong*, No. 01A01-9712-JV-00735, 1999 WL 33085, at \*5 (Tenn. Ct. App. M.S. Jan. 27, 1999). The incentive will be lacking as long as Mr. King is paying child support.

As for the State, it too "has an interest in ensuring that biological and adoptive parents support their children." *State ex rel. Johnson v. Mayfield*, No. W2005-02709-COA-R3-JV, 2006 WL 3041865, at \*6 (Tenn. Ct. App. Oct. 26, 2006). We have previously stated that "'Tennessee law strongly favors requiring biological parents to bear responsibility for their own children, and [] this policy also favors relieving putative fathers of the burden of supporting children who have been shown, through conclusive evidence such as DNA testing, not to be their natural offspring.'" *Id.* at \*5 (quoting *Taylor*, 2005 WL 517548). We

also note that at the conclusion of the hearing before the juvenile court judge, the Title IV-D attorney appeared to concede that it would be appropriate to grant Mr. King prospective relief from the child support order pursuant to Rule 60.[4]

Based upon our review of the entire record, we conclude that Mr. King made the required showing under Tennessee Code Annotated section 24-7-113, such that the juvenile court should have allowed DNA testing. If a challenger makes a proper showing under Tennessee Code Annotated section 24-7-113, then DNA tests must be ordered, "and the results of the DNA test can be used to rescind the VAP." *Parks*, 2006 WL 2032560, at *8. We conclude that the juvenile court should have allowed court-approved parentage testing in order to conclusively establish whether Mr. King is the biological father of this child.

As for Mr. King's request for prospective relief from the child support order pursuant to Rule 60.02(4), "[o]ur case law clearly rejects a bright-line rule that properly admitted genetic tests conclusively excluding a legal father from paternity automatically entitle the legal father to relief under Rule 60.02." *Hickman*, 2008 WL 4963508, at *6 (citing *State ex rel. Ellis v. Humes*, No. W2004-00602-COA-R3-JV, 2005 WL 562753, at *3 (Tenn. Ct. App. Mar.10, 2005); *Richards v. Read*, No. 01A01-9708-PB00450, 1999 WL 820823 at *12 (Tenn. Ct. App. July 27, 1999) (Cottrell, J, concurring)). Instead, the determination of whether Rule 60.02 relief is appropriate depends upon a weighing of the equities of the case. *Id.* We find that it would be more appropriate for the trial court to consider Mr. King's request for relief pursuant to Rule 60.02 after the completion of court-approved parentage tests on remand.

## IV. CONCLUSION

For the aforementioned reasons, we reverse the decision of the juvenile court and remand for further proceedings consistent with this opinion. Costs of this appeal are assessed to the appellee, State of Tennessee ex rel. Natalie Dancy, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, P.J., W.S.

---

[4] After acknowledging that Mr. King came to the juvenile court in search of relief but received bad advice, that there is no relationship between him and Son, and that Mother had shown no interest in prosecuting the case, the Title IV-D attorney stated, "it seems that under Rule 60 that maybe the court could grant relief to this man in a prospective manner."